Cert granted in No. 00-2292
by S. Ct. order filed 6/27/03

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

Nos. 00-2247(L)
(CA-97-0043-2)

---

Robert Doe, etc., et al.,

                          Plaintiffs - Appellants,

        versus

Elaine L. Chao, etc.,

                          Defendant - Appellee.

---

O R D E R

---

The court further amends its opinion filed September 20, 2002, and amended October 2, 2002, as follows:

On page 10, footnote 4, line 12 -- the reference to "§ 522a(g)(4)" is corrected to read "§ 552a(g)(4)."

Beginning on page 19, all references to "§ 522a" are corrected to read "§ 552a."

                          For the Court - By Direction

                          /s/ Patricia S. Connor
                          Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 00-2247(L)
(CA-97-0043-2)

Robert Doe, etc., et al.,

Plaintiffs - Appellants,

versus

Elaine L. Chao, etc.,

Defendant - Appellee.

O R D E R

The court amends its opinion filed September 20, 2002, as follows:

On page 1 and page 2, section 1 -- the following text is added to the list of plaintiffs:  "DICK DOE, a/k/a Virginia Privacy Litigation."

On page 4, last two lines, and page 5, first line -- the sentence is changed to end:  "by including his SSN on multi-captioned hearing notices disseminated to persons not associated with the claimant's claim."

Entered at the direction of Judge Williams, with the concurrence of Judge Luttig and Judge Michael.

For the Court

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| ROBERT DOE, a/k/a Virginia Privacy Litigation; TAYS DOE, a/k/a Virginia Privacy Litigation; BUCK DOE, a/k/a Virginia Privacy Litigation; OTIS DOE, Virginia Privacy Litigation; THOMAS DOE, Virginia Privacy Litigation; JOE DOE, Virginia Privacy Litigation; CHARLES DOE, a/k/a Virginia Privacy Litigation; DICK DOE, a/k/a Virginia Privacy Litigation, | No. 00-2247 |

*Plaintiffs-Appellants,*

v.

ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,

*Defendant-Appellee.*

| | |
|---|---|
| ROBERT DOE, a/k/a Virginia Privacy Litigation; TAYS DOE, a/k/a Virginia Privacy Litigation; BUCK DOE, a/k/a Virginia Privacy Litigation; OTIS DOE, Virginia Privacy Litigation; THOMAS DOE, Virginia Privacy Litigation; JOE DOE, Virginia Privacy Litigation; CHARLES DOE, a/k/a Virginia Privacy Litigation; DICK DOE, a/k/a Virginia Privacy Litigation, <br> *Plaintiffs-Appellees,* <br><br> v. <br><br> ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br> *Defendant-Appellant.* | No. 00-2292 |

Appeals from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
Glen M. Williams, Senior District Judge.
(CA-97-0043-2)

Argued: September 26, 2001

Decided: September 20, 2002

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Williams wrote the opinion, in which Judge Luttig joined. Judge Michael wrote an opinion concurring in part and dissenting in part.

---

2

**COUNSEL**

**ARGUED:** Jerry Walter Kilgore, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellants. Anthony Alan Yang, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Joseph E. Wolfe, Terry G. Kilgore, WOLFE, FARMER, WILLIAMS & RUTHERFORD, Norton, Virginia; Robert J. Mottern, MOTTERN, FISHER & GOLDMAN, Atlanta, Georgia, for Appellants. Stuart E. Schiffer, Acting Assistant Attorney General, Robert P. Crouch, United States Attorney, Freddi Lipstein, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

In this case, several individuals[1] (collectively Appellants) seek recovery against the Secretary of Labor (the Government) under the Privacy Act, 5 U.S.C.A. § 552 *et seq.* (West 1996 & Supp. 2000), and the United States Constitution for the disclosure of their Social Security numbers (SSNs) incident to the adjudication of their black lung compensation claims. They also seek certification of a class of persons whose SSNs were so disclosed. Because we hold that a Privacy Act plaintiff only may recover money damages upon a showing of actual damages, and because Appellant Buck Doe has not made such a showing, we reverse the district court's grant of summary judgment in favor of Buck Doe and hold that the Government was entitled to summary judgment in its favor as to Buck Doe's claim. We affirm the district court's grant of summary judgment in the Government's favor with regard to each of the other Appellants, because no Appellant other than Buck Doe could show any adverse effect stemming from a violation of the Act. We further affirm the district court's denial of leave for Appellants to amend their complaints and submit additional

---

[1] The Appellants are Tays Doe, Robert Doe, Buck Doe, Charles Doe, Joe Doe, Otis Doe, and Thomas Doe.

damages evidence. Additionally, because it is clear that Appellants' claims are not typical of the claims of the putative class, we affirm the district court's denial of class certification.

## I.

The Department of Labor's Office of Workers' Compensation Programs (OWCP) and its Division of Coal Mine Workers' Compensation are charged by Congress with the task of adjudicating black lung compensation claims. These offices retain the files of over one million coal miners who have filed for black lung benefits. To facilitate the processing of claims, OWCP assigned to each black lung claim a unique identifier called an "OWCP number" and used this number to identify the claim throughout the benefits adjudication process. (J.A. at 107, 109-10.) When a coal miner applied for benefits, he was asked to provide his SSN voluntarily and was informed that the number may be used to facilitate determination of benefits eligibility. Prior to the entry of a consent agreement in this case, if a black lung benefits applicant provided his SSN, OWCP used the SSN as the "OWCP number" for identification of the miner's claim. Further, certain administrative law judges (ALJs) sent out a form of "multi-captioned" hearing notice, listing in a single document the hearing dates for a number of different miners' claims. (J.A. at 131.) In this way, the SSNs of numerous benefits applicants were (1) disclosed to other applicants, their employers, and counsel, and (2) frequently included in publicly released ALJ and Benefits Review Board decisions that, in turn, were published in benefits decision reporters and made available in computerized legal research databases. Appellants are black lung benefits claimants whose SSNs were disclosed in this manner, and they allege in their complaints that the disclosure of their SSNs caused them emotional distress. Buck Doe and five other Appellants, all suing under pseudonyms, brought this Privacy Act case by filing separate complaints in the district court. Although several additional persons moved to intervene as plaintiffs in this case, the docket sheet indicates that the district court granted leave to intervene only to one of these persons, Tays Doe. (J.A. at 5.) On February 20, 1997, Appellants and the Government consented to the district court's entry of a stipulated order prohibiting the Government from disclosing the SSN of any black lung claimant by including his SSN on multi-captioned hearing notices disseminated to persons not

4

associated with the claimant's claim. Appellants then filed a motion seeking certification of a class comprising "all claimants for Black Lung Benefits since the passage of the Privacy Act." (J.A. at 81.) Both the Government and Appellants moved for summary judgment.

The district court consolidated the seven individual actions and appointed a magistrate judge, pursuant to 28 U.S.C.A. § 636(b)(1)(b), to prepare a Report and Recommendation regarding the summary judgment motions and the motion for class certification. After holding several hearings, the magistrate judge recommended denying summary judgment for Appellants and granting summary judgment for the Government on all claims other than Buck Doe's. Appellants, viewing the basis for the magistrate judge's recommendation as a defect in their pleadings, then moved to file amended complaints alleging emotional distress with greater particularity than was the case in their original complaints, and to file affidavits substantiating their emotional distress claims. The magistrate judge recommended denial of the motion, finding it to be out of time and further concluding that the damages deficiencies in Appellants' cases were failures of proof, not pleading. Subsequently, the district court adopted the magistrate judge's recommendations that the motion to file amended complaints and supplemental affidavits be denied, that class certification be denied, and that the Government be granted summary judgment on the claims of all Appellants except for Buck Doe. The district court rejected the magistrate judge's recommendation to deny Buck Doe's motion for summary judgment, however, and entered summary judgment awarding Buck Doe $1,000 in statutory damages. The district court held that "actual damages" must be proven to obtain the Privacy Act's $1,000 in statutory damages. Because the district court found that the primary element of damage in privacy cases is ordinarily emotional distress, however, the district court held that proven emotional distress constitutes "actual damages" sufficient to permit recovery of the $1,000 statutory minimum damages amount. The district court held that Buck Doe produced sufficient evidence of emotional distress to justify summary judgment in his favor in the amount of the $1,000 statutory damages award. The district court also found that Appellants had substantially prevailed and were entitled to attorney's fees but did not award a specific amount of attorney's fees, reserving judgment on this issue pending the presentation of a petition for attorney's fees.

Both Appellants and the Government timely appealed, raising a number of challenges to the district court's decision. On appeal, Appellants argue that "actual damages" are not required for recovery of the $1,000 statutory damage amount and that in the alternative, the district court correctly held that emotional distress counts as "actual damages." The Government argues, on the other hand, that "actual damages" are required, that such damages encompass only out-of-pocket or pecuniary harm, rather than non-pecuniary emotional distress, and that even if non-pecuniary emotional distress constitutes compensable "actual damages," no Appellant produced adequate evidence of such emotional distress to survive summary judgment.

The district court's grant of summary judgment is reviewed de novo. *Providence Square Assoc. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000) (stating that a district court's grant of summary judgment is reviewed de novo). After examining the text of the Privacy Act, we will first address the question of whether "actual damages" are a precondition to recovery of statutory minimum damages under the Act. We will then turn to the issues of whether sufficient evidence of "actual damages" to survive summary judgment was presented, the propriety of the district court's denial of Appellants' motion to amend the pleadings and offer supplemental evidence, the district court's denial of class certification, and the district court's rejection of Appellants' claims under the United States Constitution.

## II.

The relevant provision of the Privacy Act provides that:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B)  the costs of the action together with reason-
    able attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).

The question we must decide is whether a person must suffer "ac-
tual damages" in order to be considered "a person entitled to recov-
ery" within the meaning of section 552a(g)(4)(A), and therefore
entitled to the statutory minimum of $1,000 under that section. We
hold that a person must sustain actual damages to be entitled to the
statutory minimum damages award. We find this interpretation ulti-
mately persuasive for several reasons, perhaps no one of which alone
would be dispositive, but the aggregate of which are convincing.

First, and most importantly, the operative phrase "a person entitled
to recovery" appears in subparagraph (A), the sole and entire purpose
of which is to limit the liability of the United States to actual damages
sustained. The legislative placement of the phrase in this subpara-
graph — indeed, within the very same sentence as that limiting Gov-
ernmental liability to actual damages — almost itself confirms, *as a
matter of statutory interpretation*, that the referenced "person entitled
to recovery" is one who has suffered actual damages. In effect,
through this placement, Congress has defined "recovery" (albeit indi-
rectly) by its express limitation of the Government's liability to actual
damages sustained: The authorized "recovery" (apart from costs and
attorney fees, which are separately provided for) can only exceed the
amount of actual damages where actual damages are greater than $0
but less than $1,000. Thus the provision does not create "statutory
damages," but only provides for a "statutory minimum" to actual
damages.

It would be odd, to say the least, for Congress to have limited the
liability of the United States to actual damages and, in the very same
sentence, to have authorized, for a plaintiff to whom the United States
is found liable, recovery not merely beyond actual damages, but in the
complete absence of such damages. That Congress would have done
so in as circuitous and oblique a fashion as the dissent suggests bor-
ders on the inconceivable. By contrast, reading the section to require
actual damages gives effect to the eminently reasonable (and gener-
ally to be expected) presumption that the legislature correlated the

7

plaintiff's recovery entitlement with the defendant's liability by limiting the plaintiff's recovery to actual damages and by providing, by way of incentive to suit, for at least a minimum recovery even where actual damages are minimal.

Second, and relatedly, we believe that the location of the phrase "a person entitled to recovery" within the very same subparagraph and sentence as the limitation of the Government's liability to actual damages sustained, without any other explicit reference, establishes *as a grammatical matter*, as well, that the reference of this phrase is to one who is able to show actual damages. That is, having just defined the recovery that will be permitted against the United States as that of actual damages, it would torture all grammar to conclude that the phrase "a person entitled to recovery" references anyone other than one who has sustained actual damages.

Third, that the two clauses of (g)(4)(A) are separated by the conjunction "but," serves to reinforce the conclusion that the second clause ("in no case shall a person entitled to recovery receive less than the sum of $1,000") adds a qualification with respect to the class of plaintiffs defined by the first (those who have suffered actual damages) — namely, that in no event shall such person recover less than $1,000.

And, though not necessary to our conclusion, the absence of clear language authorizing an award without a showing of actual damages, where such language is readily available and to be expected, only further underscores the correctness of a construction that proof of actual damages is required for recovery of the statutory $1,000 minimum. As the dissent acknowledges, Congress, with ease, could have phrased the liability provision to provide unequivocally for a statutory minimum recovery, even for those who are unable to prove actual damages.[2] For instance, section 4 and subsection (A) could have been

---

[2] We do not believe that the interpretation of § 552a(g)(4)(A) that we adopt undermines the purposes of the Privacy Act's damages provision, as the dissent asserts. *Post*, at 38, 39. The text of § 552a(g)(4) demonstrates that Congress rationally chose to *augment* damages awards for persons able to demonstrate some "actual damages" in order to encour-

8

phrased in the following, or similar, terms: "the United States shall be liable to the individual in an amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000." That instead of such an unambiguous directive, Congress, in this simple, straightforward statute expressly providing for the recovery of actual damages against the United States, provided *sub silentio* for an award to one who has not even suffered actual damages at all, strains the powers of reasonable inference.

The dissent's primary point is, as it frankly acknowledges, an implicit one. *Post*, at 25. And as such, we would be constrained to reject it in favor of the textual analysis that we undertake above.[3] We

---

age citizen enforcement of the Act while denying statutory damages to persons who cannot meet the "actual damages" standard, in order to serve a competing objective: preventing the imposition of potentially substantial liability for violations of the Act which cause no "actual damages" to anyone. The dissent's general observation that "Congress creates statutory damages remedies because it wants to encourage civil enforcement suits," *post*, at 39-40, does not establish that Congress meant, in light of competing considerations, to encourage such suits to the degree suggested by the dissent's approach. Furthermore, even assuming that recourse to legislative history is permissible here, the dissent can point to no legislative history addressing how Congress meant to balance these competing considerations in the context of the Act's actual damages provision. *Post*, at 40 n.12 (noting the paucity of legislative history surrounding § 552a(g)(4)(A)'s minimum damages remedy). Instead, the dissent relies on the legislative history of other, *later-enacted* statutes. It is counterintuitive, however, to believe that the purpose of a later Congress comprised of different members and addressing different problems can be imputed back in time to the Congress that enacted the Privacy Act. *See Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 n.7 (4th Cir. 2001) (labeling as "dubious" any "attempt at determining whether the apparent intent of one Congress in enacting a statute is at all useful for discovering the intent of another Congress in enacting a separate, unrelated statute"), *aff'd*, *Barnhart v. Sigmon Coal Co., Inc.*, 122 S.Ct. 941 (2002).

[3] Nor has any court examined closely the question we consider today, and none has analyzed the text of the statute at all. Those courts that have come to the same conclusion as the dissent rely exclusively on *ipse dixit*, *see Wilborn v. HHS*, 49 F.3d 597, 603 (9th Cir. 1995); *Parks v. IRS*, 618 F.2d 677, 682-83 (10th Cir. 1980); *Fitzpatrick v. IRS*, 665 F.2d 327, 331 (11th Cir. 1982); *Waters v. Thornburgh*, 888 F.2d 870, 872 (D.C. Cir. 1989), entitling them to no persuasive force whatsoever.

9

reject the dissent's textual assertion that "recovery," as used in § 552a(g)(4)(A), should be read to reference § 552a(g)(4)(A)'s provision for an award of costs and attorney's fees, not only for the textual reasons recited, but also because the key phrase, "a person entitled to recovery," appears in the statute prior to the provision for costs and attorney's fees. We do not believe that Congress would have invoked a term whose definition is dependent upon a subsequent statutory provision. Furthermore, in the context of § 552a(g)(4)(A), which concerns itself with damages stemming from a violation of the Act rather than costs incurred in litigation, "recovery" is not plausibly read to reference litigation costs in the absence of any underlying compensable injury. We acknowledge that our interpretation of section 552a(g)(4)(A) to require proof of actual damages as a condition for receipt of the statutory minimum award is not strictly compelled by the statute's language. We are convinced, however, that, for the aforesaid reasons, this construction is the most persuasive reading of the section. But even were the interpretive issue closer, the ambiguity would, in accordance with established principles of sovereign immunity, have to be resolved in favor of the interpretation we adopt today, because section 552a's damages provision represents a limited waiver of sovereign immunity. As the dissent itself concedes, "[i]t is, of course, clear that [if the sovereign immunity canon applies,] we must accept the narrower of two equally convincing interpretations." *Post*, at 37.[4]

---

[4] The decisions from our sister circuits likewise support the conclusion that the scope of the Privacy Act's damages provision is to be interpreted in accordance with this principle of strict construction. *See Hudson v. Reno*, 130 F.3d 1193, 1207 n.11 (6th Cir. 1997) (holding that the doctrine that "courts must strictly construe waivers of immunity" requires that the Privacy Act damages provision, "when it is being applied against the Government . . . must be narrowly interpreted" on the question of whether § 552a(g)(4)(A)'s "actual damages" include damages for emotional distress, loss of reputation, embarrassment, or other non-quantifiable injuries), *overruled in part on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 121 S. Ct. 1946 (2001); *Tomassello v. Rubin*, 167 F.3d 612, 618 (D.C. Cir. 1999) (finding that § 552a(g)(4) is governed by the strict construction mandated by *Nordic Village* on the question of whether related, contemporaneous disclosures must be treated as a single disclosure for purposes of the Act's $1,000 statutory damages amount).

10

It is axiomatic that limited waivers of the federal Government's sovereign immunity must be "strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). A limited waiver of sovereign immunity must not be "enlarged beyond what the language requires." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (internal citation omitted); *see also Lane*, 518 U.S. at 192. This principle of "strict construction" extends beyond the mere fact of waiver, to the "scope" of a waiver, which also must "be strictly construed . . . in favor of the sovereign." *Lane*, 518 U.S. at 192.

Needless to say, determining whether or not subparagraph (A) allows plaintiffs to receive statutory damages without first proving actual damages is a question of the scope of damages available under the subparagraph. The narrower reading of the statute that we adopt herein, therefore, would have to prevail over the dissent's by virtue of this stricter construction "in favor of the sovereign," *id.*, even were there more ambiguity in the statutory text.

### III.

Having determined that the district court correctly ruled that proven "actual damages" are a precondition to recovery of § 552a(g)(4)(A)'s statutory minimum damages award, we now turn to the merits of the district court's ruling that Buck Doe succeeded in proving "actual damages" and was entitled to summary judgment in the amount of the Act's $1,000 statutory damages award. The district court held that proven emotional distress constitutes "actual damages" under § 552a(g)(4)(A) and that Buck Doe introduced uncontroverted evidence of such damages, sufficient to entitle him to summary judgment. On appeal, Appellants defend this ruling, while the Government argues that Buck Doe failed to introduce sufficient evidence of compensable emotional distress and that, in the alternative, the term "actual damages" as used in the Act does not include damages for emotional distress.

An award of compensatory emotional distress damages requires evidence "establish[ing] that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a . . . violation occurred supports an award of compen-

11

satory damages."[5] *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996). A plaintiff's own conclusory allegations that he felt "embarrassed," "degraded," or "devastated," and suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress. *Id.* at 1255; *see also Brady v. Fort Bend County*, 145 F.3d 691, 718-19 (5th Cir. 1998) (in a § 1983 action, "vague and conclusory" testimony that a claimant was "highly upset," could not "accept it mentally," "didn't feel like the same person," or "spent more time on the couch" does not satisfy the specificity standard for compensable emotional distress). Where, on the other hand, a plaintiff can produce evidence that emotional distress caused chest pains and heart palpitations, leading to medical and psychological treatment which included a formal diagnosis of "major depressive disorder," as well as necessitated prescription medication, it is clear that some amount of compensatory damages for emotional distress is warranted. *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001).

In determining whether sufficient evidence exists to support an award of more than nominal damages for emotional distress, we examine factors such as the need for medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiff's conduct and lifestyle. *Price*, 93 F.3d at 1255. In *Price*, we held that failure to establish emotional distress with sufficient evidence will result in the award of only nominal damages.[6] *Id.* Nominal damages, when available, are designed to vindicate

---

[5] ***Price*** was decided in the context of claims arising under 42 U.S.C.A. § 1983, but we see no reason why the Privacy Act does not require at least the same particularized showing of emotional distress which is a prerequisite to recovery of emotional distress damages for the violation of the most precious of rights, those secured by the United States Constitution. *See, e.g.*, *Southern Express Co. v. Byers*, 240 U.S. 612, 615 (1916) (noting, in the context of a common-law cause of action, "the elementary principle that mere pain and anxiety are too vague for legal redress") (internal quotation marks omitted).

[6] It bears note that in *Price*, we addressed the showing necessary to justify an award of more than nominal damages for emotional distress, not the showing necessary to justify an award that is above some relatively high threshold of "substantiality," as the dissent appears to suggest. *Post*,

12

legal rights "without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). An award of merely nominal damages means that a plaintiff has *not* shown "actual injury." Thus, if Buck Doe's emotional distress evidence would entitle him only to nominal damages under the *Price* framework, he has shown no "actual injury," in other words, no "actual damages sustained."

Buck Doe's evidence of emotional distress in this case falls far below the level which our precedent demands before the issue of compensatory damages for emotional distress may be submitted to the finder of fact. He testified that he was "greatly concerned and worried" about the disclosure of his SSN; that he felt his privacy had been violated in "words he cannot describe"; that he felt the consequences of the disclosure of his SSN could be "devastating" for himself and his wife, and that the disclosure of his SSN had "torn [him] all to pieces," in a manner that "no amount of money" could ever compensate. (J.A. at 55-56). Compare *Price*, 93 F.3d at 1254-56 (holding that

---

at 45 n.15; *Price*, 93 F.3d at 1256 (awarding nominal damages to plaintiffs because they could not "prove emotional distress warranting compensatory damages"). *Price* is thus concerned with the level of evidence needed to support a conclusion that a plaintiff's emotional injuries were more than *de minimis* or ephemeral, in other words, adequate to warrant more than a nominal damage award for the technical invasion of a plaintiff's rights. *Id.* at 1256. Thus, the *Price* framework is not inappropriately rigorous in the context of the Privacy Act's "actual damages" requirement. To the contrary, as the dissent notes, the Act's "actual damages" requirement is distinct from and more rigorous than the requirement of an "adverse effect." *Post,* at 21 n.2, 24. Thus, claims of emotional injury, to satisfy the "actual damages" requirement, must meet a threshold *higher* than the "injury in fact" threshold applicable to the "adverse effect" inquiry. It follows that a showing of "very minor emotional distress," *post* at 42, which, one supposes, would have to include *any* amount of momentary annoyance, angst, or irritation that might support a nominal damages award, cannot possibly suffice to establish "actual damages" under the Act. The consequent possibility that some "plaintiffs who suffer very minor harms will go uncompensated," *post*, at 47, is the price of the "actual damages" provision's gatekeeping function of avoiding tremendous overcompensation of plaintiffs whose damages evidence fails to establish any meaningful injury at all.

13

statements that one felt "embarrassed," "degraded," "devastated," etc., do not create a disputed issue of fact as to entitlement to compensatory damages for emotional distress); *Brady*, 145 F.3d at 718-20 (holding that there was no issue of fact as to entitlement to more than nominal damages for emotional distress based upon testimony that claimant was "highly upset," "spent more time on the couch," etc.). Buck Doe did not produce any evidence of tangible consequences stemming from his alleged angst over the disclosure of his SSN. He claimed no medical or psychological treatment, no purchase of medications (prescription or over-the-counter), no impact on his behavior, and no physical consequences. Further, no evidence of any kind corroborates the conclusory allegations in Buck Doe's affidavit. Under these circumstances, we need not reach the issue of whether the term "actual damages" as used in the Act encompasses damages for non-pecuniary emotional distress because, regardless of the disposition of that issue, Buck Doe's claims fail for lack of evidentiary support.[7] In turn, because we have concluded that "actual damages" are a prerequisite to the recovery of statutory minimum damages, and because Buck Doe utterly failed to produce evidence sufficient to permit a rational trier of fact to conclude that he suffered any "actual damages," the district court's entry of summary judgment in Buck Doe's favor as to his entitlement to a statutory "actual damages" award must be reversed, and we must remand with instructions to enter summary judgment in favor of the Government on his claim.

---

[7] The emotional distress allegations of the other Appellants are even less well-supported than Buck Doe's allegations and likewise fail. For example, Robert Doe testified that "nothing bad happened to [him] but [he] guess[ed] it could." (J.A. at 151.) The claims of plaintiffs other than Buck Doe are so totally lacking in any evidence of injury of any kind that, as the dissent concedes, they fail the Act's threshold "adverse effect" requirement, which is a threshold statutory standing principle, distinct from and less demanding than the "actual damages" requirement, that requires some negative consequence sufficient to constitute "injury in fact," separate from and caused by a violation of the Act. *See Quinn v. Stone*, 978 F.2d 126, 135 n.15 (3d Cir. 1992) (noting the distinction between "actual damages" and "adverse effect").

14

IV.

We next address Appellants' challenge to the district court's refusal to allow them to amend their complaints or to proffer supplemental evidence supporting their emotional distress claims. After the magistrate judge recommended granting summary judgment for the Government, Appellants moved to amend their complaints and to file additional affidavits in support of their damages case. The magistrate judge recommended denying Appellants leave to amend their complaints and to submit additional damages evidence. The magistrate judge reasoned that the proffered amendments to the complaints were belated and that, without making a showing of cause for the failure to submit the evidence earlier, a party is not entitled to submit additional evidence to resist summary judgment after a motion has been decided. The magistrate judge further reasoned that Appellants were on notice of the possible need to prove actual damages prior to the issuance of the recommendation to grant summary judgment. The district court, after a de novo review, adopted the magistrate judge's recommendation and denied Appellants' motion.

Appellants argue that the district court abused its discretion in denying them leave to amend their pleadings to include more specific allegations of emotional damages because leave to amend pleadings should be granted liberally.[8] *Island Creek Coal Co. v. Lake Shore,*

---

[8] Appellants also argue that the magistrate judge behaved improperly when, after the Government by letter stated that it did not intend to object to the amended pleadings and new material, the magistrate judge allegedly, in a telephone conference with counsel, urged the Government to change its position. The Government denies that the substance of this telephone conference was as Appellants allege. The Government clarifies that it did not actually consent to the amendment, which under Federal Rule of Civil Procedure 15(a), would have required the court to grant the amendment, but simply stated that it did not intend to object to the amendment. We hold that the district court did not abuse its discretion in recognizing the Government's decision, prior to the disposition of the motion to amend, to withdraw whatever consent had been conveyed by its earlier letter. Further, assuming that the magistrate judge stated to the Government that the pending motion to amend could, if granted, lead to a finding of liability, nothing suggests that the magistrate judge coerced the Government into changing its position.

15

*Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (noting that the policy favoring the adjudication of cases on the merits requires that leave to amend be given liberally when "justice so requires"). We conclude that the denial of Appellants' motion for leave to amend their complaints has no bearing on the outcome in this case because allegations in the pleadings would not suffice to survive summary judgment in any event. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (noting that a party resisting summary judgment "may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial"). Instead, the relevant issue is the refusal to accept new affidavits to buttress Appellants' damages evidence.

We review the district court's refusal to accept Appellants' supplemental affidavits on the issue of damages for abuse of discretion. *See United States v. Howell*, 231 F.3d 615, 622-23 (9th Cir. 2000) (reviewing for abuse of discretion a district court's refusal to permit the production of new evidence following a magistrate judge's recommendation regarding a dispositive motion).[9]

Appellants claim that they were not on notice regarding the need to produce evidence of actual damages to resist summary judgment

---

[9] Without adequate justification for the failure to present the evidence in question earlier, a district court may ignore belatedly tendered evidence offered in opposition to summary judgment after the court has ruled on a summary judgment motion. *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994); *cf. Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (noting that a party seeking an extension of time to respond to a summary judgment motion must timely file affidavits specifying which aspects of discovery require more time to complete). While the new evidence was proffered between the magistrate judge's recommendation and the district court's adoption of the recommendation, Appellants do not argue that this fact is of any significance. The relevant statute states that a district court reviewing a magistrate judge's recommendation *must* review de novo disputed portions of a magistrate's report and " *may* also receive further evidence." 28 U.S.C.A. § 636(b)(1) (West 1993) (emphasis added). Because Congress used the permissive term "may" in connection with the receipt of additional evidence, the question of whether to consider such evidence rests within the sound discretion of the district court.

16

and that this alleged lack of notice supports a finding that the district court abused its discretion in refusing to allow the filing of supplemental damages evidence. This contention is not well-founded because the Government, in a memorandum in support of its motion for summary judgment filed over a year prior to the magistrate judge's recommendation, argued that the Sixth Circuit's "actual damages" standard, as articulated in *Hudson v. Reno*, 130 F.3d 1193, 1207 (6th Cir. 1997), should govern and pointed to the absence of evidence sufficient to create a factual dispute as to actual damages under the *Hudson* standard. (Mem. in Support of Defendant's Supplemental Motion for Summary Judgment, at 21-24.) Having chosen not to present evidence of "actual damages" prior to the magistrate judge's recommendation, after the Government specifically argued that the governing law required such evidence, Appellants took a calculated risk that they would face an evidentiary insufficiency if they lost their legal argument regarding the need to prove "actual damages." We thus conclude that the district court did not abuse its discretion in declining to permit the presentation of new evidence on the ground that Appellants did not show cause for their failure to present it earlier.

## V.

Appellants next challenge the district court's denial of their motion for class certification. A decision of a district court granting or denying a motion for class certification is reviewed on appeal for abuse of discretion, but the district court must exercise its discretion within the confines of Federal Rule of Civil Procedure 23. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). The district court denied Appellants' motion for class certification on the ground that emotional damages require too much individualized proof to render the named representatives' claims typical of those of the class. The magistrate judge, in recommending denial of class certification, reasoned that emotional damages are likely to be so variable and fact-specific that damages issues overwhelm liability, precluding class certification. *See, e.g.*, *Broussard v. Meineke Discount Muffle Shops, Inc.*, 155 F.3d 331, 342-44 (4th Cir. 1998) (holding that the individualized nature of damages can, under some circumstances, destroy typicality).

Appellants argue that the district court's denial of class certification was erroneous because, in their belated amendments to their

17

complaints, they decided to pursue only the $1,000 minimum statutory damages, so that damages are in fact identical for all class members. If their amendments had been accepted, however, Appellants still would have faced grave typicality problems for two reasons. First, an adverse effect is a core liability requirement for a Privacy Act suit. The Act allows a private suit against an agency when the agency "fails to comply with any . . . provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual . . . ." § 552a(g)(1)(D) (West 1996 & Supp. 2001). And second, as we have demonstrated in Part II *supra*, the Act requires proof of actual damages to obtain a damage award. No Appellant in this case, other than Buck Doe, could even show an adverse effect, and Buck Doe was unable to demonstrate actual damages. Assuming that the claims of unnamed class members include a number of claims for which there is some evidence of adverse effect and actual damages, the putative class representatives have not suffered "injur[ies] similar to the injuries suffered by the other class members." *McClain v. South Carolina Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997). Additionally, the Government correctly notes that the proposed class was drafted without regard to the two-year statute of limitations for Privacy Act claims, *see* 5 U.S.C.A. § 552a(g)(5), so that the overwhelming majority of claims included in the proposed class may be time-barred. Brief of Appellee at 41. This, too, undermines typicality because the claims of the named representatives would differ from those of unnamed class members with potentially time-barred claims. Accordingly, the district court did not abuse its discretion in declining to certify the proposed class.

## VI.

Finally, Appellants challenge the district court's rejection of their claim that the disclosure of their SSNs violated their right to privacy under the United States Constitution. The district court's grant of summary judgment for the Government is reviewed de novo. *Providence Square Assoc., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000).

At the threshold, the Government argues that Appellants' constitutional claims are moot. These claims are indeed moot because (1) the consent decree entered into by the Government prospectively enjoins

18

all of the conduct challenged by Appellants and (2) no money damages are available because a *Bivens* action does not lie against either agencies or officials in their official capacity. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (holding that a *Bivens* action is unavailable against agencies); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal government."). Thus, no further effective relief can be given Appellants on their constitutional claims because they already have complete injunctive relief and no damages are available. We therefore refrain from addressing these claims on the merits.

## VII.

Because the Privacy Act requires proof of "actual damages" for an award of statutory minimum damages and because Buck Doe failed to provide sufficient evidence of actual damages to survive the Government's summary judgment motion, we reverse the district court's grant of summary judgment in Buck Doe's favor and direct on remand that summary judgment be entered in the Government's favor as to Buck Doe's claims. Because no Appellant other than Buck Doe produced any evidence of an "adverse effect" under the Act, we affirm the district court's grant of summary judgment in the Government's favor on the claims of all of the other Appellants. We affirm the district court's denial of class certification, and we decline to address as moot Appellants' constitutional claims.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

MICHAEL, Circuit Judge, concurring in part and dissenting in part:

I largely agree with the majority's ultimate disposition of most of this case, but this agreement in result cannot paper over my significant disagreement with the majority's interpretation of the Privacy Act. Most fundamentally, I respectfully dissent from the majority's conclusion in part II of its opinion that only a plaintiff who can prove actual damages is entitled to recover statutory damages under 5 U.S.C. § 552a(g)(4). Even if the statute must be narrowly construed as a waiver of sovereign immunity, it will not bear the interpretation the majority adopts today. I would hold that a plaintiff can recover

19

statutory damages of $1,000 upon proof that he has suffered an adverse effect as a result of an intentional or willful violation of the Privacy Act. § 552a(g)(1)(D), (g)(4). Because Buck Doe has offered sufficient evidence that he was adversely affected by the Department of Labor's wrongful dissemination of his social security number, I would remand his case for trial. I would affirm the district court's grant of summary judgment to the Secretary against the other six Doe plaintiffs on the alternative ground that those plaintiffs failed to present any evidence of adverse effects resulting from the Department's violation of the Privacy Act. I join the majority's treatment of the class certification issue in part V of its opinion except to the extent that the majority's discussion depends on its view that proof of actual damages is a prerequisite for the recovery of statutory damages.[1] I join parts IV and VI of the majority opinion in full.

## I.

The principal issue in this case is whether proof of actual damages is a prerequisite to the recovery of statutory damages under the Privacy Act. Although I dissent from the majority's holding on that issue, I begin my analysis by briefly covering the ground the majority and I share. Specifically, I explain why I agree with the majority that the district court properly entered summary judgment against all the plaintiffs except Buck Doe because none of those plaintiffs satisfied the Privacy Act's adverse effect requirement.

Subsections (A) through (C) of the Privacy Act's civil remedies provision, 5 U.S.C. § 552a(g)(1), authorize suit for certain specified violations of the Act. Subsection (D) is a catchall provision that authorizes suits against any agency that "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D). Because the Does' Privacy Act claims fall under

---

[1] I agree with the majority that the plaintiffs' proposed class definition was sufficiently overbroad to fail the typicality requirement. *See ante* at 17-18. Though the district court could have narrowed the class definition on its own initiative, its failure to do so was not an abuse of discretion. *See Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14-15 (2nd Cir. 1993).

20

subsection (D), each of them must prove that he suffered an adverse effect as a result of the Department of Labor's wrongful disclosure of his social security number in order to have standing to sue.

A plaintiff can satisfy the adverse effect requirement in § 552a(g)(1)(D) even if he has sustained no actual damages, for the meaning of "adverse effect" in subsection (g)(1)(D) is both distinct from and broader than the meaning of "actual damages" in subsection (g)(4)(A). *See Quinn v. Stone*, 978 F.2d 126, 135 n.15 (3d Cir. 1992).[2] The district court, after adopting an extremely loose reading of the adverse effect requirement, held that all of the Does satisfied the requirement. In essence, the court read the adverse effect language in § 552a(g)(1)(D) as requiring a plaintiff to demonstrate only that the government intentionally and willfully mishandled the plaintiff's own personal information (as opposed to that of some third party). Most courts, however, closely scrutinize a plaintiff's claim for evidence of adverse effects in a way that conflicts with the district court's permissive approach to the requirement. *See, e.g.*, *Quinn*, 978 F.2d at 135-37; *Albright v. United States*, 732 F.2d 181, 186-88 (D.C. Cir. 1984). As the Third Circuit has explained, the adverse effect requirement actually contains two prongs: a standing requirement (the plaintiff must have suffered a cognizable injury) and a requirement that the adverse effect be caused by the agency's violation of the Act. *See Quinn*, 978 F.2d at 135. The causal prong makes it especially clear that an adverse effect must be something distinct from the intentional and willful violation itself. For if a violation of the Privacy Act was sufficient to constitute an adverse effect, there could be no question of whether the violation *caused* the adverse effect, and hence the causal prong would be superfluous. As a result, the district court set the bar of the adverse effect requirement too low by not insisting that the Does offer evidence of adverse effects separate from, and caused by, the Department of Labor's willful and intentional violation of their Privacy Act rights.

---

[2] A few courts appear to ignore the distinction between adverse effects and actual damages by holding that only proof of economic loss qualifies as an adverse effect. *See, e.g.*, *Risch v. Henderson*, 128 F. Supp. 2d 437, 441 (E.D. Mich. 1999). This cannot be correct. Indeed, the Secretary concedes in her brief that the terms "adverse effect" and "actual damages" have different meanings. *See* Brief of Appellee/Cross-Appellant Chao at 22 n.3.

21

That said, an adverse effect can take many different forms depending on which provisions of the Privacy Act have been violated. Financial harm is the most tangible adverse effect that can result from an agency's wrongful disclosure of a social security number. We have observed that an "unscrupulous individual" armed with a person's social security number "could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain the person's paycheck." *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993). Obviously, a person suffers an adverse effect when his social security number is used by another to commit some crime of identity fraud, but a plaintiff can also be adversely affected before any crime occurs by distress about possible misuse of his illegally disclosed social security number. Most courts have held that mental distress or emotional harm of this kind is sufficient to constitute an adverse effect. *See, e.g.*, *Quinn*, 978 F.2d at 135-36 (holding that stress and emotional anguish are sufficient to establish adverse effect); *Albright*, 732 F.2d at 186 (stating that "emotional trauma alone is sufficient to qualify as an `adverse effect'"); *Parks v. IRS*, 618 F.2d 677, 682-83 (10th Cir. 1980) (stating that psychological harm can constitute an adverse effect). It follows that, at minimum, Buck Doe proffered evidence that he had suffered adverse effects sufficient to survive summary judgment when he declared in his affidavit that "no amount of money could compensate [him] for worry and fear of not knowing when someone would use [his] name and social security number to . . . use [his] checking account or even get credit cards." If found credible by the trier of fact, Buck Doe's testimony that he worried about the possible misuse of his social security would satisfy the adverse effect requirement.

The harder question is what to do with the remaining Doe plaintiffs. Their social security numbers, like Buck Doe's, were wrongfully disclosed to strangers. Given the many troubling consequences that could flow from this disclosure, persons in their position could be expected to experience at least some degree of distress at the prospect that their social security numbers might be misused. Yet, aside from Buck Doe, none of the plaintiffs offered any evidence of such distress. The question, then, is whether we can simply presume that they have suffered emotional harms sufficient to qualify as adverse effects under § 552a(g)(1)(D). The question is not likely to arise with any

22

frequency because serious plaintiffs will not ordinarily fail to offer evidence that they have been harmed by agency violations of their privacy. Still, I believe that adverse effects must be proven rather than merely presumed, and the plaintiffs other than Buck Doe have failed to present evidence of adverse effects sufficient to survive summary judgment. Accordingly, I would affirm the district court's grant of summary judgment to the Secretary against the remaining Doe plaintiffs on the alternative ground that those plaintiffs failed to present any evidence that they suffered adverse effects from the agency's wrongful disclosure of their social security numbers. I now turn to the more difficult task of discussing the fate of Buck Doe's Privacy Act claim.

## II.

Recovery in subsection (D) Privacy Act suits is governed by § 552a(g)(4), which provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4).

The majority and I agree that to recover statutory damages under the Privacy Act, an individual must prove that he has suffered an adverse effect as a result of an agency's intentional or willful violation of the Act. We also agree that emotional distress can qualify as an adverse effect and that Buck Doe's statements about his emotional distress are sufficient to allow a finding that he suffered an adverse

23

effect as a result of the Department of Labor's wrongful disclosure of his social security number. Finally, we agree that proof sufficient to establish an adverse effect may be insufficient to establish actual damages. We disagree, however, on the question of whether proof of actual damages is a prerequisite to the recovery of statutory damages.

The majority holds that, purely as a matter of textual analysis, statutory damages under the Privacy Act may be recovered only by a plaintiff who can prove that he has sustained actual damages. It refrains from deciding whether the term "actual damages" can include emotional distress or is limited to out-of-pocket losses. Instead, the majority assumes for the sake of argument that proof of emotional distress could entitle a plaintiff to actual damages, but holds that Buck Doe's conclusory claims of emotional distress are insufficient. Though the question is somewhat close, the majority's textual arguments do not convince me that a "person entitled to recovery" in subsection (g)(4)(A) must be someone who has sustained actual damages. I believe the phrase "person entitled to recovery" is more naturally read to mean anyone to whom "the United States shall be liable . . . in an amount equal to the sum of" the amounts specified in subparagraphs (A) and (B). Such a person is entitled to recovery because he has proven that he suffered an adverse effect as a result of an agency's intentional or willful violation of the Privacy act. I think it quite relevant, though the majority apparently does not, that the language in § 552a(g)(4) and similar language in other statutes has been widely read to mean exactly what I believe it means. My biggest problem with the majority's textual analysis, however, is the majority's assumption that we can decide whether proof of actual damages is a prerequisite to the recovery of statutory damages without any attention either to the question of what the term "actual damages" means or to the policies that led Congress to create a statutory damages provision as part of the Privacy Act in the first place. In my view, expanding the scope of inquiry to include these considerations makes it clear that the statute should not be read to condition the recovery of statutory damages on proof of actual damages. Nevertheless, I will first attempt to meet the majority's analysis on its own terms by assuming with the majority that we can properly decide whether proof of actual damages is a prerequisite to the recovery of statutory damages solely by analyzing the meaning and placement of the phrase "person entitled to recovery" in subsection (g)(4)(A).

24

A.

1.

    Section 552a(g)(4)(A) unambiguously provides that a "person entitled to recovery" shall receive at least statutory damages of $1,000. The critical textual question, of course, is who counts as a "person entitled to recovery." The majority argues that a person entitled to recovery must be someone who has sustained actual damages. In my opinion, the majority relies too heavily on where the phrase is placed in subparagraph (A) while giving insufficient emphasis to the ordinary meaning of the word "recovery." As a matter of ordinary language usage, an entitlement to "recovery" is surely broader than an entitlement to actual damages. Thus, the statute is more naturally read to say that anyone to whom the United States "shall be liable" in the amounts specified in subparagraphs (A) and (B) is a "person entitled to recovery." The majority's cramped reading of "recovery" would make more sense if actual damages were the only remedy provided by the statute, but they are not. Instead, the text of the statute allows for a plaintiff who has proven an intentional or willful violation of the Privacy Act to recover costs and reasonable attorney fees even if the plaintiff has suffered no actual damages at all.[3] On the majority's reading, such a person is not "entitled to recovery" even though the United States is liable to that person for costs and attorney fees. A reading that so strongly conflicts with the ordinary meaning of "recovery" ought to be rejected.[4]

---

    [3] This would still be true even if the majority was correct in holding that a plaintiff who cannot prove actual damages will recover no damages at all. It may seem odd that a plaintiff could be entitled to costs and attorney fees without being entitled to any damages, but any apparent oddity in this result only reinforces my point that statutory damages should be available under the Act without proof of actual damages.

    [4] The majority finds this argument unpersuasive. After observing that "person entitled to recovery" appears before costs and attorney fees are provided for, the majority reasons that Congress would not have made the definition of "person entitled to recovery" "dependent upon a subsequent statutory provision." *Ante* at 10. The problem with the majority's argument, however, is that on my reading the definition of "person entitled to recovery" is not dependent on a subsequent provision. Rather, a person entitled to recovery is someone to whom "the United States shall be liable . . . in an amount equal to the sum of" the amounts referred to in subparagraphs (A) and (B). That language appears prior to the use of "person entitled to recovery" in subparagraph (A).

25

Three additional reasons support my reading of the statute. First, the majority of courts to interpret § 552a(g)(4) have allowed recovery of statutory damages without proof of actual damages. In fact, disagreement about this issue arose only when courts began to interpret the statute in the light of the principle that waivers of the federal government's sovereign immunity must be narrowly construed. Second, my interpretation is consistent with that adopted by the Office of Management and Budget (OMB), the agency charged with implementing the Privacy Act. Third, statutory damages provisions that are similar in structure, language, and purpose to § 552a(g)(4) have been uniformly understood to allow recovery of statutory damages without proof of actual damages. Indeed, the legislative history of these provisions clearly evinces Congress's intent to allow recovery of minimum statutory damages without proof of actual damages. I will expand on each of these points.

First, most circuit courts have read the Privacy Act to allow recovery of statutory damages without proof of actual damages. *See Wilborn v. HHS*, 49 F.3d 597, 603 (9th Cir. 1995) (stating that statutory damages may be awarded to plaintiffs with no provable damages); *Quinn*, 978 F.2d at 131 (listing adverse effect, but not actual damages, as an element that must be proved in order to recover damages under the Privacy Act for wrongful disclosure of personal records); *Waters v. Thornburgh*, 888 F.2d 870, 872 (D.C. Cir. 1989) (stating that if a plaintiff can establish that he was adversely affected by an intentional or willful violation of the Act, he "is entitled to the greater of $1,000 or the actual damages sustained"); *Johnson v. Dep't of Treasury*, 700 F.2d 971, 972 & n.12 (5th Cir. 1983) (stating that the statutory minimum of $1,000 is "of course" recoverable even without proof of actual damages); *Fitzpatrick v. IRS*, 665 F.2d 327, 330-31 (11th Cir. 1982) (stating that plaintiffs who failed to prove actual damages could recover statutory damages); *Parks*, 618 F.2d at 682-83 (holding that plaintiffs who sought minimum statutory damages had stated a claim for relief when they alleged facts showing an intentional or willful violation of the Act that caused psychological harm constituting an adverse effect); *but see Hudson v. Reno*, 130 F.3d 1193, 1207 & n.11 (6th Cir. 1997) (holding that proof of actual damages is a prerequisite to recovery of statutory damages on the ground that waivers of the federal government's sovereign immunity must be narrowly construed in favor of the government). Until today, we had assumed,

26

albeit in dicta, that the prevailing view was correct. *See Thurston v. United States*, 810 F.2d 438, 447 (4th Cir. 1987).

The majority appears to regard the decisions favoring my reading of the Privacy Act as irrelevant because none undertakes the sort of textual analysis favored by the majority. That point is true enough, but it is worth observing that sometimes courts fail to engage in textual analysis simply because they think a point is too obvious to require discussion. Although I acknowledge that judicial head counting is not an infallible method of determining the meaning of a statute, the prevalence of my reading in the circuits is at least some evidence against the plausibility of the majority's reading. Indeed, I think we ought to be troubled that, with one possible exception, the only circuit ever to rule that a plaintiff must prove actual damages in order to recover statutory damages based its conclusion not on its reading of the text, but on the principle that waivers of sovereign immunity must be narrowly construed in favor of the government. *See Hudson*, 130 F.3d at 1207 & n.11.[5]

Second, my reading is consistent with the guidelines for implementing the Privacy Act developed by OMB. Privacy Act Guidelines, 40 Fed. Reg. 28949 (July 9, 1975). The OMB guidelines explain that when a court

> finds that an agency has acted willfully or intentionally in violation of the Act in such a manner as to have an adverse effect upon the individual, the United States will be required to pay

> Actual damages or $1,000, whichever is greater

---

[5] The D.C. Circuit's decision in *Moliero v. FBI*, 749 F.2d 815, 826 (D.C. Cir. 1984), a case that did not appeal to sovereign immunity principles, is sometimes cited as evidence that the D.C. Circuit has adopted the position that proof of actual damages is a prerequisite for the recovery of statutory damages. The precedential force of *Moliero* on this point is unclear because the D.C. Circuit has subsequently said that proof of an adverse effect *is* sufficient to recover statutory damages. *See Waters*, 888 F.2d at 872.

27

Court costs and attorney fees.

*Id.* at 28970. These guidelines "are due the deference accorded to the interpretation of an agency charged with `oversight' of implementation." *Quinn*, 978 F.2d at 133. *See also* Privacy Act § 6, 88 Stat. 1896, 1909 (1974) (authorizing the OMB guidelines); *Albright*, 631 F.2d at 919-20 n.5 (explaining that the OMB guidelines are particularly worthy of deference because they "`involve[ ] a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, or making the parts work efficiently and smoothly while they are yet untried and new'" (quoting *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978))).

Third, my interpretation is supported by both the legislative history and the judicial interpretation of statutory damages provisions similar in language, structure, and purpose to § 552a(g)(4). In 1976, only two years after passage of the Privacy Act, Congress created a civil remedy for unauthorized disclosure of tax returns and tax return information. As originally enacted, the statute read:

> In any suit brought under the provisions of subsection (a), upon a finding of liability on the part of the defendant, the defendant *shall be liable* to the plaintiff in an amount *equal to the sum of —*
>
> (1)  *actual damages sustained by the plaintiff* as a result of the unauthorized disclosure of the return or return information and, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, *but in no case shall a plaintiff entitled to recovery* receive less than the sum of $1,000 with respect to each instance of such unauthorized disclosure; and
>
> (2)  the costs of the action.

26 U.S.C. § 7217(c) (Supp. 1981) (emphasis added), *repealed* 1982. While somewhat more complex than § 552a(g)(4), this statute poses essentially the same question of interpretation presented by this case,

namely, is a plaintiff "entitled to recovery" someone who has sustained actual damages or is he simply someone to whom the defendant "shall be liable" in a specified sum. Congress gave its answer in the statute's legislative history, explaining its creation of a statutory damages remedy for unlawful disclosure of tax return information as follows:

> Because of the difficulty in establishing in monetary terms the damages sustained by a taxpayer as the result of the invasion of his privacy caused by an unlawful disclosure of his returns or return information, the amendment provides that these damages would, in no event, be less than liquidated damages of $1,000 for each disclosure.

S. Rep. No. 94-938, at 348 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3778. Not surprisingly, courts uniformly interpreted § 7217(c) to allow recovery of statutory damages without requiring proof of actual damages. *See, e.g.*, *Johnson v. Sawyer*, 120 F.3d 1307, 1313 (5th Cir. 1997) (stating that under § 7217 "a plaintiff is entitled to his actual damages sustained as a result of an unauthorized disclosure . . . or to liquidated damages of $1,000 per such disclosure"); *Rorex v. Traynor*, 771 F.2d 383, 387-88 (8th Cir. 1985) (holding that plaintiffs were entitled to minimum statutory damages under § 7217(c) despite their failure to prove any actual damages). Section 7217 was repealed in 1982 and replaced by 26 U.S.C. § 7431(c), which has also been read to authorize the award of statutory damages without requiring the plaintiff to prove actual damages. *See, e.g.*, *Chandler v. United States*, 687 F. Supp. 1515, 1521 (D. Utah 1988).[6]

---

[6] The Secretary argues that § 7431(c) does not help the Does' case because that section more clearly expresses Congress's intent to allow recovery of statutory damages without proof of statutory damages than does § 552(g)(4)(A). Section 7431(c) provides that

> the defendant shall be liable to the plaintiff in an amount equal to the sum of —
>
> (1)  the greater of —
>
> (A)  $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or

29

Congress passed another provision with language similar to § 552a(g)(4)(A) as part of the Electronic Communications Privacy Act of 1986 (ECPA). Pub. L. No. 99-508, 100 Stat. 1848. The ECPA creates a civil damages remedy for persons aggrieved by knowing or intentional violations of the Act:

> The court may assess as damages in a civil action under this section the sum of the *actual damages suffered by the plaintiff* and any profits made by the violator as a result of the violation, *but in no case shall a person entitled to recover* receive less than the sum of $1,000.

18 U.S.C. § 2707(c) (emphasis added). As with the statutory damages provisions in the tax code and the Privacy Act, it could be argued that the placement of the phrase "person entitled to recover" identifies

---

> (B)  the sum of—
>
>   (i)  the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus
>
>   (ii)  in the case of a willful disclosure or disclosure which is the result of gross negligence, punitive damages, plus
>
>   (2)  the costs of the action.

This section contains exactly the sort of language that the majority regards as adequate to authorize the award of statutory damages without proof of actual damages. *See ante* at 8. The majority fails to recognize, however, that both Congress and the courts apparently regard the language in the new § 7431 as interchangeable with that of its predecessor. Section 7217 was replaced by § 7431 as part of a comprehensive tax reform bill in 1982, *see* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, and the legislative history provides no indication that the new section was meant to change the operation of the statutory damages remedy. Courts have treated the two statutes interchangeably, *see, e.g.*, *Flippo v. United States*, 670 F. Supp. 638, 642 (W.D.N.C. 1987) (using committee report regarding § 7217 to interpret § 7431), and have uniformly interpreted both versions of the statute to award minimum statutory damages without proof of actual damages.

30

such a person as one who has suffered actual damages. Yet Congress explained that appropriate remedies under this section include "damages . . . including the sum of actual damages suffered by the plaintiff and any profits made by the violator as the result of the violation . . . with minimum statutory damages of $1,000." S. Rep. No. 99-541, at 43 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3597. And, as with the tax statute and (with a few exceptions) the Privacy Act, this language has not led courts to condition the recovery of minimum statutory damages on proof of actual damages. *See, e.g.*, *United Laboratories, Inc. v. Rukin*, 1999 WL 608712, at *5 (N.D. Ill. 1999) (stating that under § 2707(c) a plaintiff is entitled to the greater of actual damages or $1,000 because of "the difficulty in proving actual damages caused by any particular [violation of the Act].").  Indeed, one district court in this circuit has drawn an analogy between the statutory damages provisions in the Privacy Act and the ECPA. *See Dawson v. Leewood Nursing Home, Inc.*, 14 F. Supp. 2d 828, 832 (E.D. Va. 1998) (describing both acts as rewarding plaintiffs with minimum statutory damages when they achieve "symbolic victories" by proving that the defendant violated the statute.).

The statutory damages provisions in the Internal Revenue Code and the ECPA confirm that it is not unusual for Congress to use "entitled to recovery" language to identify those plaintiffs who are entitled to minimum statutory damages. Nor is it unusual for Congress to do so in the very same sentence authorizing recovery of actual damages. What is unusual is the majority's decision to treat this language as conditioning recovery of statutory damages upon proof of actual damages.[7]

---

[7] The majority criticizes my use of the legislative history of the statutory provisions in the Internal Revenue Code and the ECPA to illuminate the meaning of § 552a(g)(4)(A). According to the majority, *see ante* at 8 n.2, our decision in *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 n.7 (4th Cir. 2001), indicates that it is "dubious" to rely on Congress's intent in enacting one statute to discover "the intent of another Congress in enacting a separate, unrelated statute." This observation made sense in the context of *Sigmon*, but it has little bite here. In *Sigmon* we rejected an argument that unambiguous language in one provision of the Coal Act should be interpreted in a manner consistent with our earlier interpretation of a differently worded provision in the Comprehensive Environ-

In sum, the case for my reading of the phrase "person entitled to recovery" is a simple one. First, the ordinary meaning of the word "recovery" suggests that any person to whom the United States shall be liable in specified amounts is a person entitled to recovery. Second, Congress and other courts have indicated that they understand the language of this statute and others like it to mean exactly what I believe it means.

2.

The majority offers four reasons for its contrary view that a person entitled to recovery must be one who has sustained actual damages. First, it argues that as a matter of statutory interpretation and grammar, only a person who has sustained actual damages can be a "person entitled to recovery" because the phrase appears in the same sentence and subparagraph that authorizes the recovery of actual dam-

---

mental Response, Compensation, and Liability Act (CERCLA). *Compare* 26 U.S.C. § 9701(c)(2)(A) (a provision of the Coal Act at issue in *Sigmon*) *with* 42 U.S.C. § 9601 (a provision of CERCLA at issue in *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837-38 (4th Cir. 1992)). Here, the language of the Privacy Act's statutory damages provision is strikingly similar to that of the analogous provisions in the tax code and the ECPA. Consequently, we ought, if at all possible, to give the language of all three statutes a consistent interpretation. *Cf. Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528 (1989) (Scalia, J., concurring in the judgment) (stating that a statute should be interpreted in a manner "most compatible with the surrounding body of law into which the provision must be integrated — a compatibility which, by a benign fiction, we assume Congress always has in mind"). This means that the statutory damages provisions in the tax code and the ECPA — including their legislative history — have significant implications for our interpretation of the Privacy Act. The point is especially clear in the case of 26 U.S.C. § 7217(c), the original statutory damages provision in the tax code. If, as the majority claims, Congress had really intended to require proof of actual damages as a prerequisite to the recovery of statutory damages in § 552a(g)(4)(A), I find it difficult to believe that Congress would have chosen to use essentially the same language only two years later in the tax code to authorize the recovery of statutory damages *without* proof of actual damages.

32

ages. Second, the majority argues that the separation of the two clauses in subsection (g)(4)(A) by the conjunction "but" "reinforce[s] the conclusion that the second clause (`in no case shall a person entitled to recovery receive less than the sum of $1,000') adds a qualification with respect to the class of plaintiffs defined by the first (those who have suffered actual damages) — namely, that in no event shall such a person recover less than $1,000." *Ante* at 8. Third, the majority suggests that it would be odd for Congress to limit the liability of the United States to actual damages and then in the same sentence authorize recovery in the complete absence of actual damages. Finally, the majority suggests that Congress's failure to clearly authorize the award of statutory damages without proof of actual damages when it could easily have done so underscores the correctness of the majority's interpretation. I find none of these reasons convincing.

The majority's first argument turns on the placement of the phrase "person entitled to recovery." Although the majority is aware that the word "recovery" would normally include more than actual damages, it contends that the ordinary meaning of the word must give way because the statute implicitly redefines "recovery" to mean "actual damages" simply by placing the word "recovery" in the same sentence and subparagraph that authorizes an award of "actual damages sustained."[8] According to the majority, this placement establishes as a matter of statutory interpretation and grammar that a person entitled to recovery must be one who has sustained actual damages. The majority ought to find this claim puzzling. I would think it highly unusual for Congress to narrow the meaning of ordinary words simply through syntax. If Congress intended for "recovery" to mean "actual damages," why didn't it just say "actual damages" instead of using a word with a different (and broader) meaning and then implicitly rede-

---

[8] The majority's characterization of subparagraph (A) as having the "sole and entire purpose" of "limit[ing] the liability of the United States to actual damages sustained," *ante* at 7, is simply a case of oversell. The subparagraph's purpose is more neutrally described as specifying the amount of damages to be recovered by a plaintiff to whom the United States is liable. Further, the "sole and entire purpose" of the subparagraph cannot be to limit recovery to actual damages sustained because the statutory minimum means that some plaintiffs will recover more than their actual damages. That is the whole point of the statutory minimum.

33

fining it through its placement in subparagraph (A)? Such a procedure is hardly "simple" or "straightforward." *Ante* at 9. In any event, the majority's argument fails because its intuitions about the effect of placing the phrases "actual damages sustained" and "person entitled to recovery" in the same subparagraph do not seem to be shared by other courts or by Congress. If the majority's argument worked in this case, it would be equally effective when applied to the analogous statutory damages provisions in the tax code and the ECPA. Yet, as I have just pointed out, courts have repeatedly read the language of these statutes to allow the recovery of statutory damages without proof of actual damages. More powerfully still, Congress indicated in legislative history that it intended for the very similar language in those statutes to allow recovery of statutory damages without proof of actual damages. It is unsurprising, then, that most courts have taken it for granted that § 552a(g)(4) permits the recovery of statutory damages without proof of actual damages.

The majority's second argument, which is based on the use of the conjunction "but" to connect the two clauses of subparagraph (A), fares no better. For a start, it has the same difficulty as the first argument because neither courts nor Congress appear to recognize the rule of grammar proposed by the majority. Again, the statutory damages provisions in both the tax code and the ECPA contain the same language relied upon by the majority, yet courts have read those provisions — with Congress's blessing — to authorize the recovery of minimum statutory damages without proof of actual damages. Further, I am unconvinced that the use of the conjunction "but" must mean that the second clause in subparagraph (A) refers to the same class of persons identified in the first clause, namely, individuals who have sustained actual damages. If that had been Congress's intent, it would likely have used the same language in both clauses by saying, "but in no case shall an individual who has sustained actual damages receive less than the sum of $1,000." Instead, Congress used the phrase "person entitled to recovery" and began the clause containing that phrase with the words "but in no case." This suggests discontinuity between the two clauses. The explanation of the discontinuity is that Congress meant to signal that the phrase "person entitled to recovery" is intended to refer not to an individual who has sustained actual damages, but to anyone to whom the United States "shall be liable" in specified amounts.

34

The majority's third argument is that it makes no sense to believe that Congress would limit recovery to actual damages in subparagraph (A) and then, in the very same sentence, authorize the award of $1,000 to plaintiffs who have proven no actual damages at all. I have two responses to this argument. First, my reading of the statute does not, of course, authorize the award of statutory damages to a plaintiff totally unharmed by an agency's violation of the Privacy Act. A plaintiff must still satisfy the adverse effect requirement. Second, it is not unprecedented for Congress to provide for an award of statutory damages in the absence of provable actual damages. As I have already explained, Congress did exactly that when it created a civil remedy for unauthorized disclosure of tax return information "[b]ecause of the difficulty in establishing in monetary terms the damages sustained" as a result of such disclosures. S. Rep. No. 94-938, at 348. The same rationale explains why Congress would create a statutory damages remedy in the Privacy Act for those failing to prove actual damages. Indeed, the prevalence of my interpretation of § 552a(g)(4) in the courts partly reflects the fact that the remedy of minimum statutory damages is a fairly common feature of federal legislation. *See* 26 U.S.C. 7217(c) (Supp. 1981) (current version at 26 U.S.C. § 7431(c)) (providing minimum statutory damages for unlawful disclosures of tax return information); 18 U.S.C. § 2707(c) (providing minimum statutory damages for violations of the ECPA); 15 U.S.C. § 1640(a) (providing minimum statutory damages remedy for violations of the Truth in Lending Act). In contrast, I am not aware of any statute in which Congress has "provide [d] for a `statutory minimum' to actual damages." *Ante* at 7.

The majority also offers a fourth reason in support of its interpretation of § 552a(g)(4)(A), though it does not regard the argument as necessary to its conclusion. According to the majority, my reading of the statute is unpersuasive because if Congress had intended to allow recovery of statutory damages without proof of actual damages, it could easily have written that the United States shall be liable "in an amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual as a result of the refusal or failure, or $1,000." *Ante* at 9. It is equally true, however, that if Congress had intended to condition the recovery of statutory damages on proof of actual damages, it could have easily drafted subparagraph (A) to say that "in no case shall an individual who has sustained actual damages

35

receive less than the sum of $1,000." In short, the majority's fourth argument simply underlines the point that show that Congress intended to condition the recovery of minimum statutory damages upon proof of actual damages.

To sum up, I believe that on balance the better reading of the statute is that any person to whom the United States shall be liable for its intentional or willful violations of the Privacy Act is a person entitled to recovery. Even if the majority is correct that the use of "person entitled to recovery" to mean any person to whom the United States shall be liable is poor statutory draftsmanship, Congress signaled in the legislative history of the statutory damages provisions in the tax code and the ECPA that it thinks otherwise. It is not our place to say that language Congress has repeatedly used to authorize the recovery of statutory damages without proof of actual damages is inadequate to that task.[9]

3.

Like the majority, however, I must acknowledge that my reading of the statute is not inevitable. This brings me to the majority's fall-back position. It argues that, at worst, the statute is ambiguous and that its interpretation should prevail by virtue of the principle that waivers of the federal government's sovereign immunity must be narrowly construed, a principle I will refer to as the "sovereign immunity canon." This argument raises several potentially complicated questions. First, I have some doubts about whether the sovereign immunity canon should even apply in the circumstances of this case.[10] Even

---

[9] I would quickly add that, as I noted above, Congress is at least as guilty of poor draftsmanship on the majority's reading of the statute as it is on mine.

[10] The Supreme Court has primarily used the sovereign immunity canon to answer questions about whether a lawsuit may be brought at all or about the availability of certain forms of relief, not to decide what a plaintiff must prove to obtain relief that has been unequivocally authorized. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 196-97 (1996) (using canon to decide whether plaintiff could recover monetary damages from the federal government); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94-96 (1990) (using canon to decide whether statute of limitations may be

36

conceding that the canon applies, I am not sure what it means to say that a statute must be narrowly construed in favor of the sovereign. It is, of course, clear that we must accept the narrower of two equally convincing interpretations; but it is far from clear exactly how much better one interpretation must be before it can prevail over another interpretation. *Cf.* Antonin Scalia, *Common-Law Courts in a Civil Law System: The Role of United States Federal Courts in Interpreting the Constitution and Laws*, in *A Matter of Interpretation: Federal Courts and the Law* 28 (Amy Gutmann ed., 1997) (stating that rules that weight the scales of interpretation in favor of a particular result make it "virtually impossible to expect uniformity and objectivity" in statutory interpretation because such rules "add [ ], on one or the other side of the balance, a thumb of indeterminate weight"). I need not explore these questions in any detail, however, because I believe that

---

equitably tolled in action against the federal government); *Library of Congress v. Shaw*, 478 U.S. 310, 318-21 (1986) (using canon to decide whether plaintiff could recover interest award in action against the federal government). Indeed, the Court recently suggested that when Congress has clearly provided for a damages remedy, some subsidiary questions about the proper administration of that remedy might be properly answered without reference to the sovereign immunity canon. *See West v. Gibson*, 527 U.S. 212, 222 (1999). In short, it is not clear that the Supreme Court intends for the sovereign immunity canon to be used to answer *every* question of statutory interpretation that could affect the federal government's legal liability. Consequently, it is not surprising that most of the courts to interpret § 552a(g)(4)(A) have done so without reference to the sovereign immunity canon. Moreover, it is simply bad law to apply the sovereign immunity canon to questions of statutory interpretation that determine the availability of relief to a particular plaintiff in a particular circumstance. To insist on a clear statement at this level of detail places unrealistic demands on congressional drafting and threatens to frustrate congressional intent. *See* John Copeland Nagle, *Waiving Sovereign Immunity in an Age of Clear Statement Rules*, 1995 Wis. L. Rev. 771, 819-22 (1995). These considerations make me doubt the wisdom of applying the sovereign immunity canon in this case, and I fear that after today's decision it is only a matter of time before the government begins asking us to apply the canon to such questions as whether a particular set of consequences counts as an adverse effect under § 552a(g)(1)(D) or whether a particular manner of releasing personal information counts as an agency disclosure under § 552a(b).

37

policy considerations decisively tip the scales in favor of my interpretation. Specifically, the majority's position undermines Congress's purposes in creating a statutory damages remedy as part of the Privacy Act by making that remedy unavailable to many of its intended beneficiaries. For the reasons I explain below, I conclude that my reading must be preferred to the majority's even if the sovereign immunity canon applies.

B.

I noted above that aside from my objections to the majority's textual arguments, I disagree with the majority's apparent assumption that we can sensibly decide whether proof of actual damages is a prerequisite to the recovery of statutory damages without any consideration of what "actual damages" means or what policies led Congress to create a statutory damages remedy as part of the Privacy Act in the first place. In my view, we cannot properly interpret the statute without identifying the policy consequences of the majority's position and asking whether Congress could have intended these consequences. The consequences of conditioning the recovery of statutory damages upon proof of actual damages vary depending on the meaning of "actual damages." If "actual damages" includes only pecuniary losses, then statutory damages are unavailable to plaintiffs who have suffered only emotional distress even though such distress is the typical injury caused by invasions of privacy. If "actual damages" also includes emotional distress that is both "demonstrable" and "sufficiently articulated" under the standards in *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996), then statutory damages are unavailable to plaintiffs who have suffered minor emotional distress that could support only an award of nominal damages under 42 U.S.C. § 1983.[11] I

---

[11] There is a third possibility that I need not discuss in detail. If "actual damages" includes any evidence of emotional distress credited by a trier of fact, statutory damages are unavailable only to a plaintiff who cannot show that he suffered even minor emotional distress as a result of an agency's violation of his privacy. Under this option, any proof of emotional distress sufficient to qualify as an adverse effect will count as actual damages. Thus, this position is indistinguishable in practice from my position that proof of an adverse effect is sufficient to recover statutory damages.

38

believe the majority's argument must be wrong because, on either of these interpretations of "actual damages," conditioning the availability of the statutory damages remedy upon proof of actual damages limits the availability of that remedy more sharply than Congress intended. To see why this is so, it is necessary to say more about Congress's reasons for creating a statutory damages remedy as part of the Privacy Act.

Section 552a(g), the civil remedies section of the Privacy Act, protects citizens against government invasions of their privacy by creating a "self-help enforcement program . . . [designed to] encourage[ ] the filing of lawsuits." *Parks*, 618 F.2d at 685. *See also* Privacy Act § 2(b)(6), 88 Stat. at 1896; S. Rep. No. 93-1183, at 83 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6916, 6997 (stating that the civil remedies provision in the Privacy Act was "designed to encourage the widest possible citizen enforcement through the judicial process . . . [which was necessary because] the Act does not give any administrative body authority to ensure compliance with the Act"). To understand why Congress chose to create a statutory damages floor as part of this private enforcement scheme, we need only look to Congress's purpose in enacting similar statutory damages provisions. We explained this purpose in *Scrimgeour v. IRS*, 149 F.3d 318 (4th Cir. 1998):

> [T]he $1,000.00 statutory damage award specified in I.R.C. § 7431(c)(1)(A) is included for the benefit of taxpayers. Actual damages for the invasion of privacy that occurs when tax returns are wrongfully disclosed can be hard to quantify. In order to encourage taxpayers to act as "private attorneys general" and pursue suits against the IRS for violations of I.R.C. § 6103, Congress enacted the statutory damages provision to ensure that in meritorious cases of wrongful release a taxpayer would not walk away from the courthouse empty handed for failure of proving actual damages.

*Id.* at 327 n.11. *See also supra* at 28, 30-31 (citing the legislative history of the statutory damages provisions in the Internal Revenue Code and the ECPA). In short, Congress creates statutory damages remedies because it wants to encourage civil enforcement suits in situa-

39

tions where actual damages are difficult to prove.[12] As we observed in *Scrimgeour*, the danger that plaintiffs with meritorious cases will "walk away from the courthouse empty handed" is especially great when the wrong to be remedied is the invasion of privacy because damages arising from that wrong can be hard to quantify. This is because the typical injury caused by invasions of privacy is mental distress. *See Time, Inc. v. Hill*, 385 U.S. 374, 384-85 n.9 (1967); *Johnson*, 700 F.2d at 977. If these are the reasons why Congress created the statutory damages remedy in § 552a(g)(4)(A), it is difficult to understand why Congress would have conditioned the availability of that remedy on the plaintiff's ability to prove either economic harm or the kind of emotional harm that could support a substantial emotional damages award under the standards articulated in *Price v. City of Charlotte*.

The implausibility of the majority's interpretation of the Privacy Act is especially clear if the term "actual damages" includes only pecuniary harms. Even the Secretary acknowledges that Congress created a self-help enforcement scheme to protect citizens against government invasions of privacy and that Congress included a statutory damages remedy within that scheme to ensure that citizens with little or no provable damages would have an incentive to sue. Because mental or emotional distress is the typical injury caused by invasions of privacy, it makes no sense to believe that Congress would undercut the force of its statutory damages remedy by refusing to make statutory damages available to citizens who suffered only emotional injuries. I conclude that if actual damages under the Act are limited to out-of-pocket losses, the majority's claim that proof of actual damages is a prerequisite to the recovery of statutory damages must be wrong.[13]

---

[12] Because the legislative history of the Privacy Act contains no explicit discussion of Congress's decision to include a statutory damages remedy in § 552a(g)(4), *see Johnson*, 700 F.2d at 981 n.25, I am admittedly assuming that Congress's purpose here was the same as its purpose in creating similar statutory damages remedies. Because the statutory damages provisions in the Privacy Act and the tax code both aim at the same harm — the invasion of privacy caused by government disclosures of personal information — I believe this assumption is warranted.

[13] Like the majority, I need not reach the difficult question of the meaning of "actual damages," a question that has been extensively analyzed

Though the question is closer, I also believe that the majority's reading of the Act is untenable even if "actual damages" includes emotional distress sufficient to satisfy the standards in *Price v. City of Charlotte*. According to the majority, a plaintiff's "conclusory" testimony about his emotional distress, even if believed by the trier of fact, is not sufficient to recover statutory damages. The plaintiff's testimony must establish that he "suffered demonstrable emotional distress, which must be sufficiently articulated." *Price*, 93 F.3d at 1254.

I appreciate the need for the sort of inquiry *Price* demands in assessing substantial damages awards based solely on the plaintiff's own testimony regarding his emotional distress. In the context of the Privacy Act, I have no difficulty with the claim that a person who seeks to recover emotional distress damages in excess of the $1,000 statutory minimum should be required to bring forward the sort of proof that *Price* demands. A reviewing court must be *able* to satisfy itself both that some actual injury has occurred and that the jury has not simply been left to speculate about the proper amount of damages. In addition, the legislative history of the Privacy Act suggests that Congress worried about the possibility that juries would simply pull damages numbers out of the air based not on the actual harms suffered by the plaintiff, but on the jury's judgment about the gravity of the government's violation of the Privacy Act. *See Johnson*, 700 F.2d at 983-85 (suggesting that Congress used the term "actual damages" in the Privacy Act to emphasize that a plaintiff could not recover presumed damages based simply on the fact that his privacy had been invaded). This worry is appropriately addressed by the *Price* framework.[14]

---

by the Fifth and Eleventh Circuits. *See Johnson*, 700 F.2d at 974-86; *Fitzpatrick*, 665 F.2d at 329-31. I simply point out that if the Secretary is correct in her contention that "actual damages" includes only out-of-pocket losses, proof of actual damages cannot be a prerequisite to the recovery of statutory damages. Conversely, I believe that the majority's holding commits this circuit to the position that the term "actual damages" includes at least emotional distress that would qualify as "demonstrable" under *Price*.

[14] In many jurisdictions plaintiffs may recover presumed damages (substantial damages awards without proof of actual pecuniary or emotional harm) for dignitary torts such as the invasion of privacy. *See* 2 Dan B.

41

It is an altogether different matter, however, to make the *Price* framework the standard for deciding when a Privacy Act plaintiff may recover minimum statutory damages. The problem with this approach is that, even on the most restrictive reading, the statute plainly awards $1,000 in statutory damages to a plaintiff who can prove $1, or even one penny, of actual damages. The *Price* framework was simply not designed to help courts decide whether a plaintiff's testimony adequately supports damages awards for such small sums. Consider the various factors that *Price* regards as adequate corroboration of emotional distress: "medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiff's conduct and lifestyle." *Ante* at 12. I think it highly unlikely that any plaintiff would seek medical, psychological, or psychiatric treatment, lose income, or undergo a change of lifestyle because of one dollar's worth of emotional distress. Physical symptoms (sleeplessness, for example) might be present even in very minor cases of emotional distress, but then again they might not. All these factors are of course relevant to deciding whether a plaintiff experienced significant emotional distress — the kind that could support a substantial compensatory damages award. But they have little to say about whether claims of very minor emotional distress are genuine, and the majority agrees that if emotional distress counts as "actual damages" at all, proof of very minor emotional distress entitles the plaintiff to statutory damages under the Privacy Act. *See ante* at 7 (stating that statutory damages are available under the Act "where actual damages are greater than $0 but less than $1,000"). The *Price* framework is unhelpful in evaluating claims of very minor emotional distress for a simple reason: no plaintiff in a lawsuit under § 1983 (or any other cause of action without a statutory damages provision) ever sets out to prove that he suffered one dollar's worth, let alone one penny's worth, of emotional distress. When a plaintiff winds up with nominal damages, this means either that he conceded the absence of actual

---

Dobbs, *Law of Remedies* § 7.1 (2d ed. 1993). Dobbs suggests that § 552a(g)(4)(A) of the Privacy Act can best be understood as the statutory equivalent of presumed damages. *Id.* at § 7.3(4). In other words, the suggestion is that Congress wished to incorporate some of the force of the common law doctrine of presumed damages for dignitary torts while placing limits on jury discretion.

injury and sought to vindicate an abstract right or that he sought substantial damages and lost. A nominal damages award surely does not mean that the plaintiff has tried, but failed, to prove that he suffered one dollar's worth of emotional distress.[15]

This point is not undercut by the majority's appeal to *Carey v. Piphus*, 435 U.S. 247 (1978). According to the majority, a plaintiff who would be entitled only to nominal damages has sustained no actual damages because nominal damages "are designed to vindicate legal rights `without proof of actual injury.'" *Ante* at 12-13 (quoting *Carey*, 435 U.S. at 266 (1978)). The majority accurately states one purpose of awarding nominal damages, but it does not follow that an award of nominal damages signals the complete absence of actual injury. Nominal damages are also awarded "in cases where, although there has been a real injury, the plaintiff's evidence entirely fails to show its amount." *Black's Law Dictionary* 392 (6th ed. 1990). *See also* Restatement (Second) of Torts § 907 cmt. c (1979) ("Nominal damages are properly awarded when, although the claimant shows significant harm, its amount is not proved with sufficient certainty to entitle him to an award of compensatory damages."). Here, the fact that Buck Doe would be entitled to only nominal damages in a § 1983 case simply indicates that a jury could not reasonably make a substan-

---

[15] The majority faults me for characterizing the *Price* framework as a tool for reviewing damages awards that exceed "some relatively high threshold of `substantiality,'" *ante* at 12 n.6, and insists that *Price* is an appropriate framework for determining whether *any* award of more than nominal damages for emotional distress is warranted. I acknowledge that the notion of a "substantial" damages award is somewhat vague, so perhaps some clarification is in order. Any award over the statutory minimum of $1,000 qualifies as "substantial," and perhaps the criteria in *Price* might also be useful in evaluating awards of considerably less than $1,000. (It bears noting, however, that no case of which I am aware has used *Price* to vacate a jury award for emotional distress of less than $1,000.) In contrast, an award of $1.00 in actual damages for emotional distress is not "substantial" on any account. In saying that the *Price* framework is designed to evaluate "substantial" damages awards, my primary point is that *Price* is not helpful in deciding when a plaintiff has suffered the one dollar's worth (or even one penny's worth) of actual damages that should warrant the recovery of statutory damages even on the majority's reading of the Privacy Act.

43

tial damages award on the basis of his somewhat limited testimony regarding his emotional distress because any attempt to do so would be unduly speculative. It does not mean that he suffered no injury at all.

The problems with the majority's approach are well illustrated by its treatment of Buck Doe's Privacy Act claim. In holding that Buck Doe has produced evidence of adverse effects sufficient to survive summary judgment, the majority acknowledges that a reasonable trier of fact could credit Buck Doe's testimony about his emotional distress and could determine that he really did experience some degree of anxiety about the possibility that others would misuse his social security number. It follows that Buck Doe has presented evidence that he suffered an "injury in fact," *ante* at 13 n.6, and that a reasonable factfinder could conclude that he has established more than a merely technical invasion of his rights. This point makes it very difficult to understand the majority's conclusion that Buck Doe nonetheless failed to present evidence of "actual damages" sufficient to survive summary judgment. The majority appears to hold that even though a reasonable factfinder could conclude that Buck Doe suffered some genuine emotional distress (that he was telling the truth when he claimed that he worried about possible misuse of his social security number), no factfinder could reasonably conclude that this emotional distress warranted even one penny of compensatory damages. I do not see how this position can be correct. In other words, I do not see any room to draw a line between proof of emotional distress sufficient to constitute an adverse effect and proof of emotional distress sufficient to establish a penny's worth of actual damages. Certainly *Price* cannot help courts to make this sort of distinction. As a result, I conclude that the majority's adoption of *Price* as the measure of when a plaintiff's emotional distress proves "actual damages" simply raises the bar for recovering statutory damages higher than Congress meant to put it by placing that remedy beyond the reach of plaintiffs who suffer very minor emotional harms.

In responding to the foregoing argument, the majority appears to acknowledge, even to embrace, this consequence of its position. It suggests that the denial of statutory damages to plaintiffs who have suffered only emotional injuries that are "very minor" or not "meaningful," *ante* at 13 n.6, is simply the price of the actual damages

44

requirement's "gatekeeping function of avoiding tremendous over-compensation of plaintiffs," *id.* In response, my first point is that I do not see how the idea that a plaintiff must prove "meaningful" or more than "very minor" emotional distress can be squared with the majority's recognition that, even on its own reading of the Act, proof of any amount of actual damages greater than zero is enough to trigger the statutory damages remedy. *See ante* at 7. Few would describe emotional harms warranting one dollar's worth of compensatory damages as "meaningful," yet such harms would be sufficient to merit statutory damages under § 552a(g)(4)(A) even if the majority was correct that proof of actual damages is a prerequisite to the recovery of statutory damages. Second, I think that any purpose Congress might have had of avoiding "tremendous overcompensation" of plaintiffs is adequately served by requiring plaintiffs to prove they have suffered an adverse effect as a result of the government's invasion of their privacy. *Cf. Fitzpatrick*, 665 F.2d at 330 (explaining that the $1,000 minimum damages floor is meant to "avoid a situation in which persons suffering injury had no provable damages and hence no incentive to sue" (emphasis added)).

The majority has a further rejoinder to these points, however. It argues that because the "`actual damages' requirement" is both distinct from and more demanding than the adverse effect requirement, very minor emotional harms sufficient to count as adverse effects must be insufficient to count as actual damages. *Ante* at 12-13 n.6. I agree with the majority that a convincing interpretation of the statute must explain why Congress chose to use two terms, "adverse effect" and "actual damages," when it could have used one. I also agree that if the term "actual damages" includes emotional distress, the showing of emotional distress necessary to satisfy any actual damages requirement imposed by the Privacy Act would have to be greater than the showing necessary to satisfy the adverse effect requirement. To my mind, however, these points cut the other way and simply reinforce my argument that the Privacy Act does not contain an actual damages requirement at all. Rather, it awards minimum statutory damages upon proof of an adverse effect suffered as a result of an agency's willful or intentional violation of the Privacy Act. In addition, it creates an actual damages remedy by allowing recovery of proven actual damages in excess of the $1,000 statutory minimum. On my reading, then, the showing needed to recover proven actual damages

45

for emotional distress is of course greater than that needed to satisfy the adverse effect requirement.[16]

To put the point in another way, the majority cannot produce a satisfying interpretation of the Act by claiming both that the Privacy Act imposes an actual damages requirement and that the term "actual damages" can include emotional distress. If even very minor emotional distress counts as "actual damages," there seems to be no distinction between the adverse effect requirement and the actual damages requirement. As the majority points out, this result seems wrong because it fails to explain why Congress created two requirements rather than one. The majority avoids this problem by holding that only emotional distress satisfying the *Price* criteria counts as actual damages. This creates a gap between the adverse effect requirement and the actual damages requirement, but it does so only by making the statutory damages remedy unavailable to plaintiffs who have suffered very minor emotional harms. I do not think this result can be squared with Congress's intent in creating the statutory damages remedy, for the text of the Privacy Act indicates that if Congress created an actual damages requirement at all, that requirement should be satisfiable by proof of one dollar's worth (or even one penny's worth) of actual damages. The better course is simply to abandon the idea that proof of actual damages is a prerequisite to the recovery of statutory damages.

In sum, the majority's claim that proof of actual damages is a prerequisite to the recovery of statutory damages is inconsistent with Congress's intent in creating a statutory damages remedy for agency violations of citizens' privacy, and this is so regardless of whether the

---

[16] There is, of course, another way to explain why Congress chose to use the term "adverse effect" as well as the term "actual damages." The Act could be read to say that emotional distress is an adverse effect, that proof of an adverse effect is sufficient to recover statutory damages, and that "actual damages" includes only pecuniary harms. On this reading, plaintiffs who suffer only emotional distress as a result of willful and intentional violations of the Privacy Act recover $1,000 — no more and no less — while plaintiffs who can prove pecuniary harms in excess of $1,000 recover the full amount of these "actual damages." This seems to be the reading adopted by the Eleventh Circuit in *Fitzpatrick*.

46

term "actual damages" is limited to out-of-pocket losses or includes emotional distress. This conclusion follows from three basic points about the Privacy Act. First, Congress created the statutory damages remedy as an incentive to suit because it recognized that damages from government invasions of privacy are hard to prove. Second, Congress recognized that the typical injury caused by the invasion of privacy is emotional distress. Third, Congress intended for the statutory damages remedy to be available to plaintiffs who suffered even very minor harms as a result of the government's intentional or willful invasion of their privacy. If these three points are accepted, as I think they must be, Congress could not have intended to condition the recovery of statutory damages upon proof of actual damages. The point is especially clear if "actual damages" means out-of-pocket losses, for it would be senseless for Congress to create a statutory damages remedy in order to encourage citizen enforcement of the Privacy Act and then condition the availability of that remedy upon proof of economic losses when the typical injury caused by invasions of privacy is emotional distress. Though the question is closer, I think the claim that proof of "demonstrable" emotional distress under *Price* is needed to recover statutory damages is also untenable. The problem with this claim is that the *Price* framework is intended to help courts decide when a plaintiff has suffered the kind of emotional distress that can support a substantial damages award. When that framework is used to decide whether a plaintiff is entitled to statutory damages, the inevitable result is that plaintiffs who suffer very minor harms will go uncompensated. This cannot have been Congress's intent, for if Congress had intended to impose an actual damages requirement at all, the text of § 552a(g)(4)(A) indicates that any amount of actual damages would be sufficient to trigger the statutory damages remedy.

Accordingly, I would hold that proof of actual damages is not a prerequisite for the recovery of statutory damages under § 552a(g)(4)(A). A plaintiff who proves that he has suffered an adverse effect as a result of an agency's willful or intentional violation of the Act is entitled to the statutory damages remedy. A plaintiff may, of course, recover any proven actual damages in excess of $1,000.

## III.

In conclusion, I respectfully dissent from the majority's holding in part II of its opinion that actual damages are a prerequisite for the

47

recovery of statutory damages under the Privacy Act and from its consequent decision to grant summary judgment to the Secretary against Buck Doe. I concur in the majority's affirmance of the entry of summary judgment against the other Doe plaintiffs because they failed to show they had suffered any adverse effects as a result of the Department of Labor's wrongful disclosure of their social security numbers. Finally, I would order a remand for a trial in Buck Doe's case.

48